Sneed, J.,
delivered the opinion of the Court.
On the 15th of May, 1860, Reuben Parrott, executed a deed of gift of a tract of land in the county of Claiborne, to his two sons, Ledford and Latney Parrott. This deed was placed in the hands of Henry Beach, who wrote it for the parties. This bill was filed in Chancery at Tazewell, on the 4th of December, 1865, to have said conveyance set aside- and annulled, and the alleged fraudulent registration thereof, declared void, and *683 of no effect. To this bill, Ledford Parrott, Latney Par-rott, and Henry- Beach, are made parties defendant. The bill alleges, that the complainant is an old man, physically infirm, and ignorant of the forms and usages of business life. A copy of the deed is among the exhibits in the canse, and both the deed and the affidavit to the bill, are subscribed with the “mark” of the complainant.
It is charged, that the complainant sent for his .near neighbor, the defendant, Henry Beach, to write his will; that Beach having undertaken the task of writing the old man’s will, and having already begun to write the same, advised the complainant that it would be better to convey the lands he intended to give the defendants, Ledford and Latney, by deed. To this the complainant assented, with the understanding, between him and his sons, that, in consideration of the deed, they were to execute and deliver to him a bond, to provide for him and their mother., a home, and an ample support during the remainder of their lives. That the parties agreed that the defendant, Beach, should retain the deed until the bond* was executed; and the delivery of said deed to Beach, Avas as an escrow, without any intention of its surrender to defendants, Ledford and Latney, until they had complied with the conditions upon which it was executed. That, although the deed recites a pecuniary consideration, yet no money was paid, demanded, or contracted to be paid for the land, but that the sole consideration therefor, was the maintenance of the complainant and his wife, during their’ lives, by his said sons, to be secured by the execution of said bond. That *684 the complainant expected the bond to be executed on the same day the deed was written, but it was postponed on account of the lateness of the hour at which the writing of the deed was finished. The complainant charges, that while the defendant, Latney, has, in all respects, demeaned himself toward him as a dutiful son, has relinquished to the complainant all interest he claimed under said deed, has contributed all he could toward the support and comfort of' his parents, in their declining years; that the said Ledferd has been undutiful and. unkind; that though often called upon to execute said bond, he had persistently refused to do so; that he has contributed nothing toward the support of his parents from the time of the execution of said deed to the time of the filing of the bill; that the said Ledford and defendant, Beach, have combined together to defraud him of his land; that they had gone clandestinely to the Register’s office, and caused said deed, after the probate thereof, to be registered, without consulting or advising him or the said Latney, thereof, but that the fact of such clandestine probate and registration had been purposely concealed from them; and that he had caused search to be made in the Register’s office for the original deed, and it could not be found; that, as the said Ledford has continually neglected and refused to execute said bond, the complainant believing that he was no longer bound by said agreement, had demanded said instrument of the said Beach, who refused to surrender the same, stating that the deed was placed in his hands by all three of the parties, and he’ would only deliver it when he could find them all together; that,- under said deed, defendant, Ledford, was claim *685 ing an undivided half of the land, and was endeavoring to sell the same.
There are other allegations in the bill, of the acts of said Beach and said Ledford, tending to show a combination between them to wrong the complainant; but the case made out in the bill is sufficiently indicated in the foregoing abstract of its charges. The bill prays for an injunction, forbidding the sale, renting or occupation by the said Beach and Ledford, of said land; that the deed be declared null and void, and the registration thereof of no effect; that the deed be delivered up .to be canceled, and for general relief. The defendants are called upon to answer; but the oaths of defendants, Ledford and Beach, are expressly waived. The defendant, Latney, does not answer; but the cause proceeds against him under an order pro confesso. ' The defendants, Ledford Parrott and Henry Beach, file a joint answer, which is sworn to. They deny the fraudulent combination, or the intent of fraudulently combining to wrong the complainant or to deprive him of his land. They insist that the deed was absolute and unconditional; that the agreement to execute the bond was a collateral undertaking; that the deed was delivered to said Beach by his two co-defendants, Ledford and Lat-ney, and not by the complainant. They admit the registration of said deed, and are silent as to the manner thereof; that when the will was in course of preparation, nothing was said as to the support and maintenance of the old people; but when the complainant changed his mind and determined to convey by deed, he at once demanded that the defendants, Ledford and *686 Latney, should bind themselves to support and maintain their parents during the rest of their lives, and secure them a home on the land; that it was understood and agreed that the bond shoirld be executed at some convenient time; but it is insisted that the deed had no dependence on the bond, but that the agreement as to the bond was independent of and collateral to the deed; that the latter was not deposited as an escrow, but delivered as an absolute deed, by the said complainant to the said Ledford and Latney, and by them- to said Beach, to be retained by said Beach until demanded by them. The defendant, Ledford, denies his unwillingness to execute the bond. He avers that he was never called upon, directly, to so do, and asserts his willingness and readiness to do so now. He claims the land as his own, but denies that he ever attempted the sale thereof, to the injury of his father. He alleges that he offered to furnish his father with provisions; but he would not receive them. He disclaims all intention of wrong or fraud, either by himself or in combination with said defendant, Beach, and charges that his brother and co-defendánt, Latney, has poisoned the mind of his father against, him, that he may absorb his portion of the old man’s estate.
The decree of the Chancellor was in favor of the complainant. He declared the instrument in question to have been deposited as an escrow; that the registration thereof was fraudulent, void, and of no effect; that the instrument was a nullity; and that the title of the complainant was unaffected by the proceeding. He decreed that the defendants deliver up the' deed to be cancelled, and that defendants, Ledford and Beach, pay all the *687 costs of the cause.. From this decree, the said two defendants appealed.
We have given to the facts disclosed in this case the most careful consideration. We have endeavored to accord to the conduct of defendants, Beach and Ledford Parrott, the. most charitable construction, and to reconcile it with that integrity of purpose which they claim for themselves in their answer. The result is, that, in every respect, our convictions coincide with those of the Chancellor. It is difficult to imagine a case where a fraudulent purpose^ always conceived in cunning and difficult of proof, has been more successfully demonstrated by a well linked chain of circumstances, than in this case.
We are not fully advised of the complainant’s mental condition at the time of the execution of the deed. The defendants sought to prove that he was of sound mind, but the evidence is evasive and unsatisfactory. One or two of the witnesses, when interrogated as to the state of complainant’s mind at the time, answered that he was “as sound as common;” another, “cannot say that he was sane or insane.” We are informed in the bill, that he is an old and infirm man; and we are left to infer from the proof, that the complainant, naturally credulous and confiding, was rendered none the less an easy victim of imposture by that imbecility of mind which keeps even pace with gathering years. The Court of Chancery, while it guards with jealousy .the rights of all, recognizes .decrepit old age, no less than helpless orphanage, as its peculiar ward. 1 Swan, 474; 5 Sneed, 282; 1 Story Eq. Jur., 237.
But the case is rested, in the bill, not upon any *688 ground of mental imbecility on the part of the complainant, but upon the allegation of a fraudulent combination between the two respondents, to cheat and defraud complainant out of the land in question, and a failure of consideration; and upon these grounds alone, assumed in the decree to be proven, does the Chancellor rest his decision of the case. To relieve against the effects of deliberate fraud, is among the inherent powers of the Court of Chancery; and, it may be said, that no phase of its jurisdiction is exercised with more alacrity.
In the cancellation, rescission or reformation of deeds, or other instruments, for fraud, accident, mistake, or other valid cause, its jurisdiction, founded upon the administration of what is called a “protective or preventive justice,” is unembarrassed, and its remedies complete.
Was the deed handed by the parties to Henry Beach, on the 15th of May, 1860, intended as an absolute deed, to be delivered when called for, to the grantees, or was it deposited with him as an escrow to be delivered as a deed only on the performance of certain conditions? An escrow is concisely defined as a conditional delivery of a deed to a stranger, and not to the grantee himself, until certain conditions shall be performed, and then it is to be delivered to the grantee. Until the condition be performed and the deed delivered over, the estate does not pass, but remains in the grantor. 2 Johns. R.., 248.
The first question by which we are confronted in this case, is, why it is -that for five years or more from the date of the execution of the deed to the time of the filing of the bill, this instrument should have remained *689 in the custody of the defendant, Henry Beach? He says in his answer, that it was delivered to him by the grantees,- to be preserved for them, and that it was done when it was executed, and in the presence of the grantor. The complainant says that he delivered it to Beach as an escrow, a special deposit, only to be good in passing the estate therein described, upon the performance'of a condition of the most vital importance to the grantor. If it was intended as an absolute deed, to take effect at once, why charge Henry Beach with the custody of it at all? "Why not deliver it at once to the grantees themselves? This question, when considered in connection with other facts of this case, is decisive of the rights of the parties. We have the proof' here very clearly made, that, in spite of the positive denials of the answer, the condition of this deed was, the execution of a bond by the grantees, to maintain and support their parents during the remainder of their lives. We have it shown, beyond all doubt, that the complainant was about to have his will written; that anxious to make an equitable division of his estate among the natural objects of his affection and his bounty, he had sent for his near neighbor, the defendant, Henry Beach, to write his will; that after he had progressed in said writing nearly to a conclusion, the old man suddenly changed his mind, he says, at the suggestion of Henry Beach; but the defendant, Beach, in his answer, is silent as to this charge, which becomes a serious one, in connection Avith other facts in this cause. We have it shown that defendant, Ledford, for. five years, neglected and refused to execute the promised bond. We have it, that, for a *690 part of that time, Ledford and Beach' were controlling and enjoying the rents and profits of a part of the land. We have it/ that Beach refused to surrender the deed, although offered indemnity by the complainant, and that he and Ledford, without consulting or advising complainant, or the said Ledford’s co-grantee, Latney ■Pa'rrótt, had gone, secretly to the «town of Tazewell, and caused the probate and registration of this deed, about the 7th of September, 1865, which, when the complainant ascertained, as he did by accident, through one of his neighbors, he at once took steps for the filing of this bill. We have it, that, through this .period of time, when the complainant was exerting himself to secure the bond or the deed, that the defendant, Ledford, admits a sale of the land to his co-defendant, Beach, and that Beach proposes a' trade with Bowman, .if the latter will give him an ' advance of - fifty dollars upon the one thousand he had agreed to give Ledford.
The remark of Beach to the witness, Bowman, is not very clearly defined, but taken in connection with Led-ford’s admission of a sale, and the price, it can mean nothing else than a proposition to take fifty dollars for his bargain. We have it shown, in spite of the denial in the answer and the statements of one or more witnesses, who have evidently forgotten the details of the transaction, that the defendant, Beach, in some unguarded moment, admitted to one of the Bowman’s that he held the deed for the complainant and his two sons, and he also said that he knew how the deed could be taken out of his possession, but he would not tell it. In connection with Beach’s subsequent purchase of Ledford’s *691 undivided interest, under the deed, as tenant in common with Latney Parrott,■ it is a significant fact, that, as charged in the bill, the complainant had caused a line of partition to be designated in the will to allot to each of his sons the share intended for him, and that such was the understanding of his intention by all the parties, and the will was prepared accordingly; and .that, in the preparation of the deed his wish in this respect was disregarded; and he was induced to believe by said Beach that the deed was best as it was, granting the estate to his sons as tenants in common, without reference to the said line, and’ “that the boys could divide according to said line.” In this the complainant’s wishes were defeated and disregarded; and he charges that Led-ford had always repudiated said division line, and refused to conform to it. The unfinished will is transcribed into the record and its identity proven. The complainant charges that the' proposition to give the land by deed instead of by will came from the defendant, Henry Beach, while he was writing the will; and it is a strange and suspicious feature of the transaction, that said proposition should have been made at the very instant the complainant made known to Beach what part of the land he intended to devise to the defendant, Led-ford. The will, after designating the line of partition, proceeds with these words: “Thereby I will and bequeath to my son, Ledford Parrott, all of the before named tract of land lying on the west side of the above named line,” and here it abruptly terminates; and, at this instant, the defendant, Beach, the draftsman of the will and the deed alike, suddenly proposes to change the *692 mode of disposition from a will to a deed. The complainant assented, with the understanding that the line indicated in the will should he carried into the deed. The deed is then written, disregarding the line of division, and conveying the land to the'two sons as tenants in common, in undivided moieties. The complainant charges that, although he insisted upon the observance of the line, yet his wishes were disregarded, and he was induced to sign the deed as it was, the defendant, Beach, assuring him that it was best as it was, and that “the boys could divide according to the line.” The answer makes no response to this allegation of the bill. The defendant, Beach, becomes one of the witnesses to the deed; and the sequel, his conduct in regard to the custody of the deed, his secret probate and registration thereof, and his subsequent negotiation for the purchase of Ledford’s interest in the land, explains his conduct and betrays his design from the beginning.
But, if any clearer demonstration of the character of these transactions be necessary, it may be found in the utter silence of the answer as to some of the more serious charges- of a fraudulent complicity, as alleged in the bill; in the fact of the close alliance of the defendants, Beach and Ledford, in regard to the matter from' the beginning to the end; in the fact that they secretly caused the registration of the deed; in the fact that when' the deed was demanded of Beach, his co-defendant, Ledford, forbade its surrender, and he obeyed him; in their negotiations for the sale and purchase of Led-ford’s interest in the land; and in the fact that their solemn asseverations in the answer, that the deed was *693 delivered by the complainant as an absolute deed, and not as an escrow, are positively disproved by Beach’s own admissions that it was delivered to him by all three of the parties, to be held for all alike.
We have in this case, an exhibition of filial irreverence and ingratitude, which could ' scarcely hope to escape the severe reprobation of a Court of Chancery. There are certain principles pertaining to the relation of parent and child, that lie at the foundation of social order and domestic happiness, which a court of equity can not disregard in adjusting a litigation between them. “The duties of children to their parents,” says Sir William Blackstone, “arise from a principle of natural justice and retribution; for to those who gave us existence we naturally owe subjection and obedience during our minority, and honor and reverence ever after. They who protected the weakness of our infancy are entitled to our protection in the infirmity of their age; they who, by sustenance and education, have enabled their offspring to prosper, ought, in return, to be supported by that offspring, in case they need assistance. And upon this principle proceed all the duties of children to their parents, which are enjoined by positive laws.” 1 Black. Com., 374.
The decree of the Chancellor in this case, might very well have reposed upon the badges of fraud and the reprehensible conduct of the defendants, already indicated in this opinion. But another remains to be disclosed.
It is proven that the defendant, Ledford Parrott, actually caused the arrest of his father and mother, and *694 his sister and his brother, upon a State’s warrant, for an assault, and also upon a peace warrant; and that he stated to a neighbor that he would piot appear against them in the State prosecution, if the old man would dismiss this bill. This unnatural and extraordinary conduct is not explained in the testimony, nor is a question asked concerning it upon cross-examination of the witness. We forbear to criticise as it seems to deserve. We are left to infer, in the absence of all explanation upon the subject, and in view of the previous conduct of the defendant, that this criminal proceeding was as frivolous as it was unnatural, and that it was instituted by him to subserve a special purpose, in regard to this litigation.
We find no error in the action of the Chancellor, and affirm his decree.